LEONARD v. LOVELL.

(*Circuit Court. W. D. Michigan, S. D.*   December 8, 1886.)

PATENTS—IMPROVEMENT IN THE CONSTRUCTION OF REFRIGERATORS—INFRINGEMENT—WANT OF NOVELTY.
    A suit was brought to enjoin the infringement of letters patent No. 261,736, for improvements in the construction of refrigerators, the particular feature being this:   The ice-floor being in the usual position, two sets of cleats are attached to the inside of the refrigerator case, at each end of the ice-floor, and extending perpendicularly from the ice-floor to the top of the case, and are in pairs.   These cleats are arranged by twos, and parallel to each other, but a little distance apart, so as to form a groove.   Into these grooves, and from the top, is slid the partition wall, which descends so as to touch the ice-floor; but, being narrower than the height of the chamber, leaves the necessary opening for the warm air to pass over at the top, the advantage claimed being that the wall is thus made "removable," whereby cleansing the walls of the flue is facilitated.   *Held*, invalid for want of novelty, and not infringed by defendant's patent, No. 295,259.

In Equity.

*Edward Taggart,* for complainant.
*Louis S. Lovell* and *Joyce & Spear,* for defendant.

SEVERENS, J. The bill in this cause was filed in behalf of the complainant, Leonard, who is the patentee in letters patent No. 261,736 for improvements in the construction of refrigerators. He alleges that the defendant, Lovell, professing to be engaged in the manufacture of refrigerators under letters patent No. 295,259, is constructing and selling what is, in substance and effect, an infringement upon the first-mentioned patent, and he prays for an injunction and an accounting. The defendant's answer admits the issuance of the patent to complainant as stated in the bill, and also admits that he, the defendant, is manufacturing refrigerators under the Lovell patent, No. 295,259; but he denies that the complainant was the original inventor of the devices claimed to be infringed, denies that they constitute a patentable invention, and designates several prior patents which the defendant insists anticipated the specific features in refrigerators which the complainant claims are covered by his patent.

Testimony has been taken, but the substance of it consists in the specifications, claims, and letters for the Leonard and Lovell refrigerators, and the specifications, claims, and illustrations of the following patents: No. 201,713, to D. S. Stevens, of date March 26, 1878; No. 8,463, reissue to G. F. Smith, October 22, 1878; No. 175,143, to C. B. Page, March 21, 1876; No. 225,595, to Hale & Ramsey, March 16, 1880; No. 222,604, to S. Scott, December 16, 1879; No. 204,216, to R. T. Hambrock, May 28, 1878; No. 62,643, to W. Lane, March 5, 1867; No. 133,147, to J. H. Fisher, November 19, 1872; and No. 207,356, to W. Horn, Jr., and others, August 27, 1878. The application for the Leonard patent was filed June 13, 1882, and that for the Lovell patent, January 23, 1884.

Various claims covered by the complainant's patent, were in the beginning of the present controversy, alleged by him to be infringed by the defendant; but in the end the contest has been brought upon the limits of a single ground, which will be indicated after some preliminary suggestions.

The first and principal inquiry in the case arises out of the claim put forward in defense that the patent of the complainant is void because—*First,* the invention is not original; *second,* it is not patentable for the reason that such invention, so far as the claim alleged to be infringed is concerned, was only that of ordinary mechanical skill, and does not rise to the quality of invention intended to be provided by the patent laws.

Refrigerators of different sorts have been in use for a considerable period, differently classed because constructed upon different principles. The present controversy relates to the class constructed upon the principle of a box or case divided into two main compartments;

an upper one for an ice receptacle, and the lower for a chamber in which to store provisions or other material to be refrigerated, with an opening from the upper or ice compartment downwards into the provision chamber, and another opening from thence into the upper part of the ice chamber. Thus, by utilizing the natural law that the colder air descends and the warmer rises, a constant circulation is kept up until the ice is dissolved, and the motive power is dissipated. In carrying this principle into execution, the general plan on which prior patents have gone is to create an opening or openings, either by slots covered by projecting shelves or by round apertures protected in the same or some similar way, through the bottom of the ice-box, through which the cold air from the ice descends into the lower chamber, and to construct flues along the outer walls of the refrigerator, from the lower chamber to the upper part of the upper chamber, from which the warm air ascending from the lower chamber is drawn through an opening made for that purpose, again cooled by the ice, and forwarded through the same route in repeated circulation. The several patents issued anterior to either of these in question, and illustrations of which are put in evidence, were designed on this principle, and adopted such a method of construction. In this method the wall of the refrigerator was generally used as one wall of the ascending flue, and either a fixed inner wall or the side of the ice-box served the double purpose of retaining the ice in place, away from the refrigerator wall, and of forming an inner wall for the warm air flue. In some of the patents the inner wall of the flue was not carried to the top of the upper chamber, but a space was left between the top of this inner wall and the top of the box, for the circuit of air above mentioned.

In the case of the Stevens patent, the side of the ice-box constitutes the inner wall of the warm-air flue. The specifications indicate that the ice-box is made so as to be removable, ("detachable" is the term used, but this, I take it, is equivalent to "removable,") and preferably of open work. This box or cage rests upon the ice-floor, but whether it is removable by lifting out at the top, or drawing out through the door in front, is not quite clear; but I infer the latter, from the use of what are designated "guide-strips." In this arrangement the air would be admitted from the flue to the ice at different heights, through the open work of the side of the box, instead of being all admitted through one opening at the top.

Mr. Leonard's patent was designed to cover certain claimed improvements in the construction of the ice-rack, and the cold-air opening below, and its protections; which are features not now material, all controversy about any specific infringement of these having been abandoned. But the patent also covers a claim for an improvement in the construction of the inner wall of the warm-air flue, and which is also the end wall of the ice-box. The particular feature is this: The ice-floor being in the usual position, two sets of cleats are at-

tached to the inside of the refrigerator case at each end of the ice-floor, and extending perpendicularly from the ice-floor to the top of the case, and are in pairs. These cleats are arranged by twos, and parallel to each other, but a little distance apart, so as to form a groove. Into these grooves, and from the top, is slid the partition wall, which descends so as to touch the ice-floor, but, being narrower than the height of the chamber, leaves the necessary opening for the warm air to pass over at the top. The advantage claimed is that the wall is thus made "removable," whereby cleansing the walls of the flue is facilitated. It is said that at that point the condensation of the warm air is most rapid, and the depositions of impure matter on the walls is greatest.

The Lovell patent is like this in this feature, except that this wall, instead of being run into grooves at the end of it, is attached, at its upper edge, by hinges, to the wall of the case, and, hanging in towards the ice-floor, rests upon the upper edge thereof. So, of course, this partition wall could be lifted in and up, upon its hinges, and its own weight carries it back to its place, so that its lower edge rests upon the end of the ice-floor, as above stated, and it is perforated to permit the passage of air. But this partition is not removable in the sense that it can be taken out of the refrigerator. The defendant, however, uses a different method of construction; and, instead of the hinges and the lateral fall of the partition, he brings the partition to a perpendicular position, from the end of the ice-floor, and runs a rod from front to rear of the refrigerator, a little below the top, to which rod the upper edge of the partition is attached. The lower edge is prevented from going back into the flue by the turning up, like a flange, of the edge of the ice-floor. Thus, it will be seen, the position of the partition is the same as in the complainant's patent, but the attachment is different, and, while it is movable, it is not removable in the sense of being susceptible of being readily taken out. It serves the same purpose, however, in affording facility for cleansing the walls, that the complainant claims for his device.

With this description of the elements of fact in the present controversy, and which is as definite and clear as I am able to make it without the use of diagrams, we are brought to the substantial question whether this device of the complainants of a removable partition wall is such a new and useful improvement as to constitute a patentable invention; and it seems to me that I cannot hold it to be so without disregarding the plain doctrine on this subject towards which the supreme court has been verging for 30 or 40 years, and on which the law is now quite securely anchored. It appears to me, from as careful a study of the decisions of the court of highest authority on this subject as I am able to make, that the settled interpretation of the true spirit and meaning of the patent laws is that they were enacted for the purpose of stimulating the activity of inventive genius in the production of new and useful contrivances and products for

the public advantage; and that it was not the purpose of those laws to protect as a monopoly, for the advantage of any individual, the product of the exercise of that common skill and mechanism which are the proper and expected work of artisans trained in the dexterities and science of their trade to the higher standard of its art. Not every trifling device, nor any obvious improvement in the material already possessed, is intended to be rewarded. The decisions to which I have referred are to be found in the following cases, and others occurring between, in the reports of the supreme court: *Hotchkiss* v. *Greenwood,* 11 How. 248; *Phillips* v. *Page,* 24 How. 164; *Stimpson* v. *Woodman,* 10 Wall. 117; *Hailes* v. *Van Wormer,* 20 Wall. 353; *Smith* v. *Nichols,* 21 Wall. 112; *Brown* v. *Piper,* 91 U. S. 37; *Reckendorfer* v. *Faber,* 92 U. S. 347; *Dunbar* v. *Myers,* 94 U. S. 187; *Pearce* v. *Mulford,* 102 U. S. 112; *Heald* v. *Rice,* 104 U. S. 737; *Vinton* v. *Hamilton,* Id. 485; *Hall* v. *Macneale,* 107 U. S. 90; S. C. 2 Sup. Ct. Rep. 73; *Atlantic Works* v. *Brady,* 107 U. S. 192; S. C. 2 Sup. Ct. Rep. 225, which is an especially valuable and prominent case, where Mr. Justice BRADLEY explained, in clear and admirable language, the intent and purpose of the statutes. Another valuable case in the same volume, and quite illustrative of the present, is *Slawson* v. *Grand-street R. Co.,* 107 U. S. 649; S. C. 2 Sup. Ct. Rep. 663. Following these, and fortifying and solidifying the doctrine, are *Estey* v. *Burdett,* 109 U. S. 633; S. C. 3 Sup. Ct. Rep. 531; *Double-pointed Tack Co.* v. *Two Rivers Manuf'g Co.,* 109 U. S. 117; S. C. 3 Sup. Ct. Rep. 105; *King* v. *Gallun,* 109 U. S. 99; S. C. 3 Sup. Ct. Rep. 85; *Bussey* v. *Excelsior Manuf'g Co.,* 110 U. S. 131; S. C. 4 Sup. Ct. Rep. 38; *Pennsylvania R. Co.* v. *Locomotive E. S. T. Co.,* 110 U. S. 490; S. C. 4 Sup. Ct. Rep. 220; *Phillips* v. *Detroit,* 111 U. S. 604; S. C. 4 Sup. Ct. Rep. 580; *Morris* v. *McMillan,* 112 U. S. 244; S. C. 5 Sup. Ct. Rep. 218; *Hollister* v. *Benedict, etc., Manuf'g Co.,* 113 U. S. 59; S. C. 5 Sup. Ct. Rep. 717; *Blake* v. *San Francisco,* 113 U. S. 679; S. C. 5 Sup. Ct. Rep. 692; *Thompson* v. *Boisselier,* 114 U. S. 1; S. C. 5 Sup. Ct. Rep. 1042; *Stephenson* v. *Brooklyn, etc., R. Co.,* 114 U. S. 156; S. C. 5 Sup. Ct. Rep. 777.

It is true that language apparently implying a less stringent interpretation is found in the expressions of early authorities of high character, among them Chancellor KENT and Mr. Justice STORY. These and other authorities are referred to in the dissenting opinion of Mr. Justice WOODBURY in *Hotchkiss* v. *Greenwood,* 11 How. 248. With the veneration due from one in this place, it would not become me to do more than to say of their interpretation that I am resistlessly borne in another direction by my construction of the recent and authoritative cases. It may be that the constantly increasing multiplicity of patents in every branch of industry and manufacture has indicated the necessity, from public policy, of a more stringent rule,—one which should relieve those engaged in the common trades and avocations of life from tribute to those who drop down upon their tables in swarms, under

pretense of having the warrant of monopoly too often based on trivial grounds. And it may be that the increased facilities for education afforded by the public, and the quickened intelligence of the people, has carried the plane of patentable invention higher than where it once was. Of course, no reflection is intended in these suggestions upon the patents involved in the present suit.

But notwithstanding the presumption arising from the granting of the patent, upon which the complainant's solicitor lays much stress, and which is *prima facie* undoubtedly entitled to some weight, I cannot think that either of these patents, in respect to the feature in question, covers any patentable invention. The flues at the side of the refrigerator for conducting the warm air upward, and over into the ice chamber, are nothing new. The use of the wall of the ice box for the inner wall of the flue is not new. In some of the previous patents this was rigid, but it served the same purposes of containing the ice and making a wall of the flue. In the Stevens patent, however, this side wall was removable. The cage or box for the ice was made either entire, part way up, or "preferably of open work." I do not see that it could be very material whether the air should be admitted to the ice box in one opening through the wall or many; the two purposes above alluded to are both subserved. The method of securing the partition wall in the complainant's refrigerator by a pair of cleats at each end is an old and very common device, resorted to for the purpose of making a movable wall or partition. The instances of such use are too common to require mention. Now, is there anything new in the feature that the wall is removable? It is claimed that this makes it easier to clean the parts most liable to become soiled by impurities, and this I can easily understand and believe. But the corresponding wall of the Stevens patent was removable for the same purpose. It is true that Stevens did not in the claims appended to his specification allude to this feature of utility as promoted by making his ice-box removable, but the facts contained in his specifications disclose this feature for all there is of utility in it; and the authorities are clear that a patent is avoided for the want of novelty, although the advantages of the device were neither claimed nor seen by the prior inventor, provided his specifications disclose it. *Tucker* v. *Spalding*, 13 Wall. 453; *Stow* v. *Chicago*, 104 U. S. 547, 550.

The adoption by the complainant of the old device of securing the ends by a pair of cleats, whereby it was removable, to serve the same purpose and no other than those accomplished by a former patent, and in no respect in any substantially different way, was not invention; at least, not of anything patentable. It appears that all the sides of the ice-box in the Stevens patent came out together. Whether the one afforded more convenience in this respect than the other I cannot say; but it could have no substantial effect upon the feature of removability that, whereas in the case of the complain-

ant's wall it could be taken out by itself, in the Stevens patent the same proceeding which would take one wall would also take out the other three. This wall in the defendant's refrigerator, neither as patented nor made, is removable from the case; and it seems to me that the difference between it and the complainant's, in the principle covered by complainant's claim, is greater than that between the complainant's and the Stevens patent. However that may be, I am of the opinion that the variations from what was already accomplished in the design and construction of refrigerators at the time when the patents in question were applied for were not, in respect to this peculiarity, at least, the result of such original invention as is intended by the statute.

Upon his specifications, Mr. Leonard also claimed the results from a combination of his ice-floor and his partition wall; but, as this is not much dwelt upon in the argument, I notice it only to say that, both the elements of the combination being old, and the constituents not qualifying each other in any way, the combination is not patentable. *Pickering* v. *McCullough*, 104 U. S. 310.

It follows from these views that the bill must be dismissed.