### HANDEL CO. v. JEFFERSON GLASS CO. et al.

(District Court, N. D. West Virginia. May 1, 1920.)

1. **Patents ☞259—Contributory infringement not established, in absence of collusion.**

A glass company, which manufactured and sold to its trade glass blanks for making lamp shades, *held* not liable for infringement of a patent for a shade holder, because its blanks were purchased and used by another in the manufacture of the alleged infringing articles, in the absence of proof of collusion.

2. **Trade-marks and trade-names ☞68—"Unfair competition" to warrant equitable relief.**

The essence of "unfair competition" consists in the sale of the goods of one manufacturer or vendor as those of another, and if ordinary attention by the purchaser would enable him at once to discriminate the one from the other, equity will not interfere.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Unfair Competition.]

3. **Trade-marks and trade-names ☞79—Suits for unfair competition not encouraged.**

Suits to enjoin competition as unfair are not to be encouraged.

4. **Patents ☞174—Improvement patents strictly construed.**

A patent, which at most can only be construed as disclosing an improved combination of old elements, whereby a new and useful result is attained, amounting to a step in advance, is to be strictly construed.

5. **Patents ☞26(2)—New combination of old elements must disclose invention.**

Where a patent monopoly is sought for a combination of old elements, not only a new and useful result must be attained, but it must be one which required discovery or invention, and not merely mechanical skill.

6. **Patents ☞328—979,664, for lamp shade holder, void for lack of invention.**

The Handel patent, No. 979,664, for holder for lamp shades, *held* void for lack of invention, in view of the prior art.

In Equity. Suit by the Handel Company against the Jefferson Glass Company and the Jefferson Company. Decree for defendants.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

H. E. Dunlap, of Wheeling, W. Va., and Dodson & Roe, of New York City, for complainant.

J. M. Ritz and John A. Howard, both of Wheeling, W. Va., and Duell, Warfield & Duell, of New York City, for defendants.

DAYTON, District Judge. [1] The plaintiff has instituted this suit for infringement of United States patent, No. 979,664, issued December 27, 1910, coupled with a charge of unfair competition. Both of the corporation defendants have answered, fully traversing the allegations of the bills. The subject-matter of the controversy relates to the manufacture and sale of lamp shade holders. The defendant the Jefferson Glass Company, in its separate answer, specifically and positively denies that it is—

"engaged in the use, manufacture, or sale of said shade holders, such as described in plaintiff's bill of complaint, or any shade holders whatever. It is engaged in the business of manufacturing and sale of glass. Respondent does not use, sell, or manufacture any shade holders whatever, nor have any of its officers or agents used, sold, or manufactured any shade holders whatever, and respondent is in no way interested or engaged in the manufacture and sale of any shade holders whatsoever, and has not in any way infringed on the plaintiff's patent."

The only positive evidence adduced to refute this denial is the admitted fact that its codefendant, the Jefferson Company, buys from the Glass Company "the plain crystal or opal blank (shade) as it comes from the mold," which it takes in its unfinished state, finishes, decorates, and fits to the lamp unit which it sells. There is, and can be, no contention that plaintiff's patent covers the manufacture and sale of lamp shades. Its object is confined solely to the holder of such shades. The specification of the patent itself is sufficient to settle that. It says:

"The object of our invention is to produce a holder for lamp shades and the like, having features of novelty and advantage."

It inevitably follows that for a glass company to manufacture the plain crystal or opal blank as it comes from the mold in no way infringes the plaintiff's patent right, unless it be shown that it does so in direct collusion and interest with another for the purpose of adjusting to such shade the patented holder and selling it, so adjusted, as a finished product. I have carefully considered the statement of witness Netting that Austin, the manager of the Jefferson Company, told him that he had left the Handel Company with the idea of going into the lamp business with other gentlemen who were interested in the Jefferson Glass Company, but that the new company was to go under the name of the Jefferson Company, and they were to make high-class lamps, and were to operate simply as a selling agent for the Jefferson Glass Company.

This may be perfectly true. He may have contemplated making just such an arrangement and combination, but it does not follow that he was able to, or did in fact, make them. It may be true that gentlemen interested in the Glass Company are interested in the Jefferson Company, but that fact alone cannot be held sufficient to fix

liability upon the corporation itself. Witness Carr states Austin told him, when he showed him their line of goods in the Jefferson Hotel, St. Louis, "about two years ago," that—

"The Jefferson Company was a new concern, which had been formed to sell the product of the Jefferson Glass Company and that anything I would buy from the Jefferson Company would be the product of the Jefferson Glass Company."

This cannot be held sufficient to bind the Glass Company for two reasons: First, because Austin is not shown to be connected in any capacity with the Glass Company and for any false representation of his it could not be bound; second, because the statement, reasonably construed, may be held to have meant that the material used in the manufacture of the glass shades in blank was to be that of the Glass Company, which is admitted to be true. As to the statements of the "drummer," or traveling salesman, Brunn, it cannot, we think, be held that his position was such as to warrant holding the Glass Company responsible, without some proof of his being authorized to make them by some responsible officer of that company. The recklessness of statements made by "drummers" in order to secure orders is too well known.

In opposition to all this inferential testimony stands out the positive denial in the answer of the Glass Company, and the positive testimony of Austin that the only connection between the two companies is that the Jefferson Company purchases, in due course of trade, from the Glass Company, only the plain crystal or opal shade blank, which was and could not be in any way covered by patent, because of the long and general use of lamp shades. It follows that this cause must be dismissed as to the Glass Company.

[2] Nor am I impressed with the very serious and earnest contention of complainant's counsel that the facts of this case disclose a "most abominable case of unfair competition." Manufacturers have three distinct methods, under our laws, whereby they may protect their peculiar trade articles from being manufactured and sold by others: First, as to some such articles, by securing a patent; and, second, as to others, by securing a trade-mark monopoly; and, third, by resort to equity to secure its injunction against unfair competition. The resort to the last is decidedly less effective that the other two; for, as said by Chief Justice Fuller, in Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 551, 11 Sup. Ct. 402, 34 L. Ed. 997, "the deceitful representation or perfidious dealing must be made out or be clearly inferable from the circumstances." The same distinguished jurist, speaking for the Supreme Court, has said in Howe Scale Co. v. Wyckoff, etc., 198 U. S. 140, 25 Sup. Ct. 614, 49 L. Ed. 972, "the essence of the wrong in unfair competition consists in the sale of the goods of one manufacturer or vendor for those of another, and, if the defendant so conducts its business as not to palm off its goods as those of complainant, the action fails." He cites Mr. Justice Strong's statement in Canal Co. v. Clark, 13 Wall. 311, 20 L. Ed. 581, that "purchasers may be mistaken, but they are not deceived by false representations, and equity will not enjoin against telling the truth";

Mr. Justice Clifford's in McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828, that "a court of equity will not interfere, when ordinary attention by the purchaser of the article would enable him at once to discriminate the one from the other"; Mr. Justice Jackson's in Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144, that "even in the case of a valid trade-mark, the similarity of brands must be such as to mislead the ordinary observer"; and also cites Coats v. Merrick Thread Co., 149 U. S. 562, 13 Sup. Ct. 966, 37 L. Ed. 847, and Liggett & Myers Tobacco Co. v. Finzer, 128 U. S. 182, 9 Sup. Ct. 60, 32 L. Ed. 395.

[3] Resort to this action is not to be encouraged, for several reasons; among others, because the remedy it seeks, if applied, is not limited in time, as in the cases of patents and trade-marks, and because all legitimate and lawful competition is not only permissible, but extremely desirable, and entitled to be encouraged to the last limit. The public is vitally interested in seeing that no monopoly be acquired by any one in the manufacture and sale of articles of necessity, or even luxury, that is calculated to increase the selling price thereof. On the contrary, the man who can produce a better quality of a given article and sell it at a lesser price than it has been selling for theretofore in the market, is entitled to the highest commendation. Circuit Judge Sanborn, of the Eighth circuit, in Wrisley v. Iowa Soap Co., 122 Fed. 796, 59 C. C. A. 54, has so clearly stated the law that such statement leaves little, or nothing more to be said:

"Every manufacturer and vendor has the undoubted right to sell the goods he makes or owns to the public, to his own customers, and to the customers of his competitors if he can, at lower prices and on better terms than those furnished by them, and by these and by all fair means to divert their trade to himself, even though his activity and enterprise may destroy the business of his rivals. The only intention the law condemns is the purpose of a manufacturer or vendor to palm off his own goods as those of his competitor, and the only acts from which such an intention may be lawfully inferred are those whose natural and probable effect is to perpetrate such a fraud. The line of demarcation between acts indicative of a lawful and of an unlawful intent here runs wide and clear between those which would not and those which would be likely to induce the common purchaser, when exercising ordinary care, to buy the article of the vendor as the product or property of his competitor. The duty is imposed upon every manufacturer or vendor to so distinguish the article he makes or the goods he sells from those of his rival that neither its name nor its dress will probably deceive the public or mislead the common buyer. He is not, however, required to insure to the negligent or the indifferent a knowledge of the manufacture or the ownership of the articles he presents. His competitor has no better right to a monopoly of the trade of the careless and indifferent than he has, and any rule of law which would insure it to either would foster a competition as unfair and unjust as that promoted by the sale of the goods of one manufacturer as those of another. One who so names and dresses his product that a purchaser who exercises ordinary care to ascertain the sources of its manufacture can readily learn that fact by a reasonable examination of the boxes or wrappers that cover it has fairly discharged his duty to the public and to his rivals, and is guiltless of that deceit which is an indispensable element of unfair competition. Centaur Co. v. Marshall, 97 Fed. 785, 789, 38 C. C. A. 413, 417; Coats v. Thread Co., 149 U. S. 564, 567, 572, 573, 13 Sup. Ct. 966, 37 L. Ed. 847; Kann v. Diamond Steel Co., 89 Fed. 706, 707, 32 C. C. A. 324, 325; Manufacturing Co. v. Spear, 2 Sandf. [4 N. Y. Super. Ct.] 599, 606; Canal Co. v. Clark, 13 Wall. 311, 322, 20 L. Ed. 581; Gorham Co. v. White, 14 Wall. 511, 528, 20 L. Ed. 731; McLean v.

Fleming, 96 U. S. 245, 255, 256, 24 L. Ed. 828; N. K. Fairbank Co. v. R. W. Bell Mfg. Co., 23 C. C. A. 554, 561, 77 Fed. 869, 876."

More recent cases by federal courts, fully approving this enunciation of the law, are S. R. Feil Co. v. John E. Robbins Co. (C. C. A. 7th Cir.) 220 Fed. 650, 136 C. C. A. 258; A. Y. McDonald & Morrison Mfg. Co. v. H. Mueller Mfg. Co. (C. C. A. 8th Cir.) 183 Fed. 972, 106 C. C. A. 312; Walter Baker & Co. v. Gray (C. C. A. 8th) 192 Fed. 921, 113 C. C. A. 417, 52 L. R. A. (N. S.) 899; Scandinavia Belting Co. v. Asbestos, etc. (C. C. A. 2d) 257 Fed. 937, 169 C. C. A. 87.

Applying these principles to the facts here, I am driven to hold that they fall far short in establishing a case of unfair competition. The fact that Austin left the employ of the complainant in order to organize an independent company to manufacture and sell lamps and lamp shades was not in itself reprehensible. There is no legal or moral obligation upon an employé to remain in service and refrain from independent competitive business. The complainant could have no exclusive trade monopoly in lamps or lamp shades, both of which, in all shapes, forms, varieties, and colors, were common property many years, doubtless, before the plaintiff company had existence. It had taken advantage of this common right to manufacture and sell a great variety of lamps, comprising many different shapes, sizes, and designs. The Jefferson Company, after organization, embarked likewise in the manufacture and sale of over 100 varieties of lamps of different shapes, sizes, and designs. The use of lamp shades in various forms is comparatively as old as the use of lamps themselves. The use required of them necessarily requires the different forms of shades to be of a general outline similarity, however, and in the costlier types, such as those involved here, the value is largely dependent upon the art and skill displayed in their decoration and other ornamentation. In the exercise of this common right to manufacture an article in such diversity of forms, colors, and varieties, it is very reasonable to suppose that sameness will arise in the finished products of the article as produced by different manufacturers. In such case, if a manufacturer desires to segregate a new and novel form of the article, so as to control its making, under ordinary conditions, it becomes his duty to identify it by some particular trade-mark, which notifies the world of his intention. His attaching to a common article, thus open to all, a new and novel means of adjustment or control, can give him no right thereby to claim the exclusive use of the article itself.

For this reason, the action for unfair competition is generally confined to cases where the peculiar trade name, mark, or label of a specific article, which has been manufactured and exploited by one, is so closely imitated by another's trade name, mark, or label as to deceive the ordinary mind into the belief that the two are of one and the same make, or to the other case where fraudulent representations, directly or indirectly, are made to the effect that they are of the same make. None of these conditions arise here. The evidence adduced by both sides refutes their existence. On the contrary, it shows that the Jefferson Company's purpose, as avowed by its manager, was to manufacture a finer and better lamp and shade of its own than the

Handel one, and at some 25 per cent. less cost to the trade; that the lamps and shades were never in any single instance sold under any false representation, direct or indirect, that they were of the Handel manufacture, but, on the contrary, were sold as competitive ones, fully marked and branded, and billed to purchasers as the "Jefferson." It follows that the complainant, failing in sustaining its charge of unfair competition, in no event should recover the costs of taking the many depositions all over the country relating to this branch of the case. The controversy is thus narrowed to two questions—the validity of the patent, and that of infringement by the Jefferson Company, and the latter is dependent upon the solution of the former.

[4] As to the validity of the patent, two things are to be particularly noted:

First—That it cannot be considered a pioneer patent, involving a broad initiative invention, embodying original thought in a practical mechanism which under the law is to be zealously protected by the courts and accorded a wide range of equivalents (Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U. S. 399, 25 Sup. Ct. 697, 49 L. Ed. 1100), but, to the contrary, it can only at most be construed to involve an improved combination of old elements, whereby a new and useful result, amounting to discovery or invention, is attained— not of a trifling character, but a step in advance in the useful arts, and it must therefore be subjected to the stricter rules of such cases as Railway Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053; Dunbar v. Meyers, 94 U. S. 187, 24 L. Ed. 34; Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. 225, 27 L. Ed. 438; Knapp v. Morss, 150 U. S. 221, 14 Sup. Ct. 81, 37 L. Ed. 1059; Phillips v. Detroit, 111 U. S. 604, 4 Sup. Ct. 580, 28 L. Ed. 532; Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 493, 20 Sup. Ct. 708, 44 L. Ed. 856; Potts v. Creager, 155 U. S. 597, 608, 15 Sup. Ct. 194, 39 L. Ed. 275; Smith v. Nichols, 21 Wall. 112, 22 L. Ed. 566; Roberts v. Ryer, 91 U. S. 150, 23 L. Ed. 267; Penn. Railroad v. Locomotive Truck Co., 110 U. S. 490, 4 Sup. Ct. 220, 28 L. Ed. 222; Morris v. McMillin, 112 U. S. 244, 5 Sup. Ct. 218, 28 L. Ed. 702; Blake v. San Francisco, 113 U. S. 679, 5 Sup. Ct. 692, 28 L. Ed. 1070; Royer v. Roth, 132 U. S. 201, 10 Sup. Ct. 58, 33 L. Ed. 322; Watson v. Cincinnati Ry. Co., 132 U. S. 161, 10 Sup. Ct. 45, 33 L. Ed. 295; Marchand v. Emkem, 132 U. S. 195, 10 Sup. Ct. 65, 33 L. Ed. 332; Butler v. Steckel, 137 U. S. 21, 11 Sup. Ct. 25, 34 L. Ed. 582; Ansonia Co. v. Electrical Supply Co., 144 U. S. 11, 12 Sup. Ct. 601, 36 L. Ed. 327; Gates Iron Works v. Frazer, 153 U. S. 332, 14 Sup. Ct. 883, 38 L. Ed. 734; Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719; Tack Co. v. Two Rivers Mfg. Co., 109 U. S. 117, 3 Sup. Ct. 105, 27 L. Ed. 877; Holland v. Shipley, 127 U. S. 396, 8 Sup. Ct. 1089, 32 L. Ed. 185; Hendy v. Miners Iron Works, 127 U. S. 370, 8 Sup. Ct. 1275, 32 L. Ed. 207; Fond Du Lac County v. May, 137 U. S. 395, 11 Sup. Ct. 98, 34 L. Ed. 714; Busell Trimmer Co. v. Stevens, 137 U. S. 423, 11 Sup. Ct. 150, 34 L. Ed. 719; Beecher Mfg. Co. v. Atwater Mfg. Co., 114 U. S. 523, 5 Sup. Ct. 1007, 29 L. Ed. 232; Wright v. Yuengling, 155 U. S. 47, 15 Sup. Ct. 1, 39 L. Ed. 64; Brinkerhoff v. Aloe, 146 U. S. 515, 13 Sup.

Ct. 221, 36 L. Ed. 1068; Richards v. Chase Elevator Co., 158 U. S. 299, 15 Sup. Ct. 831, 39 L. Ed. 991; Specialty Mfg. Co. v. Fenton Mfg. Co., 174 U. S. 492, 19 Sup. Ct. 641, 43 L. Ed. 1058; Slawson v. Grand Street R. R. Co., 107 U. S. 649, 2 Sup. Ct. 663, 27 L. Ed. 576; Pearce v. Mulford, 102 U. S. 112, 26 L. Ed. 93; Pomace Holder Co. v. Ferguson, 119 U. S. 335, 7 Sup. Ct. 382, 30 L. Ed. 406; McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800; Patent Clothing Co. v. Glover, 141 U. S. 560, 12 Sup. Ct. 79, 35 L. Ed. 858; Corbin Cabinet Lock Co, v. Eagle Lock Co., 150 U. S. 38, 14 Sup. Ct. 28, 37 L. Ed. 989; Florsheim v. Schilling, 137 U. S. 65, 11 Sup. Ct. 20, 34 L. Ed. 574; Gardner v. Herz, 118 U. S. 180, 6 Sup. Ct. 1027, 30 L. Ed. 158; Crouch v. Roemer, 103 U. S. 797, 26 L. Ed. 426; Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935; Magin v. Karle, 150 U. S. 387, 14 Sup. Ct. 153, 37 L. Ed. 1118; Howard v. Detroit Stove Works, 150 U. S. 164, 14 Sup. Ct. 68, 37 L. Ed. 1039; Richards v. Chase Elevator Co., 159 U. S. 477, 16 Sup. Ct. 53, 40 L. Ed. 225; Guidet v. Brooklyn, 105 U. S. 550, 26 L. Ed. 1106; Tooth Crown Co. v. Gaylord, 140 U. S. 55, 11 Sup. Ct. 716, 35 L. Ed. 347; Am. Road M. Co. v. Pennock, 164 U. S. 26, 17 Sup. Ct. 1, 41 L. Ed. 337; Estey v. Burdett, 109 U. S. 633, 3 Sup. Ct. 531, 27 L. Ed. 1058; Brown v. District of Columbia, 130 U. S. 87, 9 Sup. Ct. 437, 32 L. Ed. 863; Shenfield v. Nashawannuck Mfg. Co., 137 U. S. 56, 11 Sup. Ct. 5, 34 L. Ed. 573; Wollensak v. Sargent, 151 U. S. 221, 14 Sup. Ct. 291, 38 L. Ed. 137; Kokomo Co. v. Kitselman, 189 U. S. 8, 23 Sup. Ct. 521, 47 L. Ed. 689.

Second—It is asserted by counsel for the defendants in their brief that the original application for this patent as to claim one, now here only claimed to be infringed, as disclosed by the file wrapper, was rejected by the Patent Office, until it was amended by specifying the securing ring *15* as "not rotable." I do not have the file wrapper before me; if a copy of it was put in the record, I have failed to find it. The statement, however, is not controverted by counsel for plaintiff in their reply brief, and I feel justified in assuming it, therefore, to be true; and, it being true, it is important as lessening the prima facie weight in favor of the patent's validity by reason of its issuance, for it seems impossible almost that a monopoly of this kind could be supported alone on this "tenuous differentiation over art otherwise anticipatory." The ruling in Knapp v. Morss, 150 U. S. 221, 14 Sup. Ct. 81, 37 L. Ed. 1059, that "a claim in letters patent cannot be so construed as to cover what was rejected by the Patent Office on the application for the patent" is pertinent.

[5] The fifty cases hereinbefore cited, from the Supreme Court fully illustrate how hard it is, and has been, to control the consuming desire to secure the patent monopoly within bounds, and enforce the true principles that, as stated in Atlantic Works v. Brady, supra:

"The design of the patent laws is to reward those who make some substantial advance discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. * * * It was never" their object "to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures."

And therefore, where such monopoly is sought for a combination of old elements not only a new and useful result must be attained, but it must be such as "amounts to discovery or invention"—"not of a trifling character, but a step in advance in the useful arts"—that "mere mechanical skill can never rise to the sphere of invention. The latter involves higher thought and brings into activity a different faculty. Their domains are distinct." That "to be patentable the invention covered must consist of a new and useful means of accomplishing the result, and if the means consist of a mere adaptation, by the application of mechanical skill, of devices previously well known, there can be no valid patent." That merely making the parts of a machine or device adjustable with respect to each other does not constitute invention, but is within the ordinary ingenuity of a skilled mechanic. Fraser v. Gates Iron Works, 85 Fed. 441, 29 C. C. A. 261 (C. C. A. 7th Cir.), certiorari denied 171 U. S. 687, 18 Sup. Ct. 942. That "an improvement consisting in taking a material well known and long used for the purpose, and using it in a method well known and long used, involves merely the skill of the workman, and not the genius of the inventor, and lacks the novelty of a patent." That "the substitution of a known equivalent for one of the elements of a former structure is not patentable." That "the mere carrying forward or extending the application of a prior device, with a change only in degree, does not amount to invention."

[6] Applying these and other principles so clearly enunciated by the Supreme Court in these cited precedents, to the patent here involved, I am fully convinced that its validity cannot be held to meet the required legal tests, and that these cited cases present many devices more nearly so doing than this one does, yet the patents issued therefor were by this court of last resort declared invalid for lack of novelty and invention under the state and condition of the prior art.

I therefore hold it invalid, refuse the injunction prayed for, and direct the dismissal of plaintiff's bills.