AMERICAN BRAKE SHOE & FOUNDRY CO. v. RAILWAY MATERIALS CO. et al.

SAME v. WESTERN IRON & STEEL CO. et al.

(Circuit Court, N. D. Illinois, E. D. February 26, 1906.)

Nos. 26,629, 26,630.

1. PATENTS—INVENTION—ADAPTATION OF DEVICE TO NEW ART.
    The strengthening of iron castings by the insertion of wrought iron bars or rods in the process of making belongs in the casting or foundry art, and not in the art in which the particular casting may be used, and the employment of the device in casting brake shoes, after its use for the same purpose in casting sleigh runners, annealing boxes and other articles did not constitute its transfer and adaptation to a new art, nor involve invention.

2. SAME—CASTING BRAKE SHOES.
    The Herron patent, No. 423,996, for a brake shoe having wrought iron bars imbedded in the casting for the purpose of strengthening it is void for lack of invention, in view of the prior casting art.

In Equity. On final hearing.

Thomas F. Sheridan, for complainant.
William O. Belt, for defendants.

KOHLSAAT, Circuit Judge. The bills in these cases ask similar relief, and by agreement of the parties, the proofs taken are to be considered by the court in both cases. Complainant brings suit to restrain the respective defendants from infringing claim 2 of patent No. 423,996, granted to Charles Herron on March 25, 1890, for an improvement in brake shoes, and for other relief. The claim in suit reads as follows:

"2. In a brake shoe, the shoe A, having blocks, B, of steel set in its face below the surface, and the strips, C, of wrought iron, substantially as shown and described, and for the purpose specified."

Complainant's counsel at page 31 of their brief say:

"The last element of the claim is 'the strips, C, of wrought iron substantially as shown and described.' This element is intended to cover strips of wrought iron imbedded in the body of the brake shoe, or, more properly speaking, cast therein immediately behind the inserts for the purpose of strengthening the entire mass. These strips are placed in such position that any stress or strains which tend to break the shoe transversely will exert a pulling strain on them, and a crushing strain on the body of the shoe, thus applying the wrought iron of the one and the cast iron of the other to the exact force they are best adapted to stand. In this last element and its arrangement rests the novelty of applicant's invention, and in

combining this element with those that have heretofore been considered rests the patentee's claims to invention."

And at page 32, they further say:

"It is also well known in this art that wrought iron resists a pulling tension better than cast iron, but that cast iron withstands crushing strains somewhat better than wrought iron; hence Herron's conception lay, not in the fact that he imbedded wrought iron rods in a shoe—for this had been done by both Sargent and Curtice, without obtaining any good results— but on a construction in which the longitudinal strips were imbedded in such a position that they formed what might be termed a 'trussed' shoe, that has for the last 15 years withstood the tremendous strains of modern use. Did this amount to invention? Here is the crux of the case."

From the briefs and the state of the art as disclosed in the record, it is evident that the whole matter in controversy is found in the insertion and location of the wrought iron strips. The defenses are noninfringement, lack of invention, and other invalidity of the claim of the patent in suit. The specification of the patent, so far as the same is pertinent to this inquiry, is as follows:

"Strips or curved rods, C, of wrought iron are cast into the main body of the shoe for the purpose of strengthening the entire mass, it being in such a position that any stress tending to break the shoe in cross section will exert a pulling tension on said strip, C, and a crushing strain on the body of the shoe, thus applying the wrought iron of the one and the cast iron of the other to the exact force it is best adapted to successfully withstand. These strips may be as many in number as desired. The heavier the work to be done the more intense is the strain to be overcome or guarded against and the more strength to be supplied by these strips, C."

It appears from the record that the imbedding of metal rods or strips in a cast structure dates back to 1854 and includes numberless devices, such as annealing boxes, vises, skylight, and sash bars, burglar proof safes, sad irons, sleigh runners, armor plate, stove doors, etc. This was common foundry practice. Complainant's expert testifies that:

"Long before the application for the Herron patent, it was known and understood that a gray iron casting could be strengthened by imbedding in it a rod or rods of wrought metal—the rod or rods being suitably supported in the mold during the pouring of the molten metal of the casting. This may be taken, then, to be one of the elementary mechanical expedients within the reach and at the disposal of any inventor working in any of the mechanic arts at the time of the Herron invention and for years before the Herron invention."

Nor is any claim made that Herron was the first to recognize the value of the tensile strength of wrought iron rods imbedded in a cast iron structure. Arnold calls attention to this quality in his patent No. 54,838, issued May 22, 1866, for an "improved method of combining wrought iron with cast iron." And he mentions shafts, axles, car wheels, and railroad bars, as among the uses to which this compound can be applied. The Brown patent, No. 78,786, issued June 9, 1868, for an "improved process of combining wrought and cast metal," likewise refers to the use of wrought iron in a casting in order to make the tensile strength of the wrought iron available in aiding a cast iron structure to resist strains or concussions. In what complainant terms the brake shoe art, we find, among others, the

McConway reissue patent, No. 8,255, of May 28, 1878, showing a brake shoe reinforced by a malleable iron backpiece riveted to the cast iron shoe body; the Pollock patent, No. 410,989, granted September 10, 1889, showing a perforated metal or other plate cast in the shoe, and designed to hold rods in place during the process of casting; Curtice reissue patent of 1880 employing a wrought iron bar; Sargent's patent of 1887 for a composite brake shoe; a German publication made in 1871, wherein George Meyer in an article entitled "Report on the Experience Gained from the Experiments Made on the Upper Silesian Railway with Cast Iron Brake Shoes," sets out a construction of brake shoe having a round or flat safety rod of wrought or malleable iron, $\frac{3}{4}$ to 1 inch in width, riveted on the back of the brake shoe, and set in lugs provided at both ends of the shoe. The main purpose of this rod seems to have been to prevent part of the shoe from falling in case of fracture, and thus to prevent possible accidents. The strengthening feature of the rod, however, is also mentioned.

It is thus apparent that so far as the insertion, broadly speaking, of a bar of wrought iron in a casting is concerned, it is neither new nor serves a new purpose. It is there for the purpose of strengthening the cast metal brakeshoe and to hold the pieces together in the event the shoe breaks. Complainant urges that the employment of wrought iron rods prior to the patent in suit has been in nonanalogous arts; that the brake shoe art discloses no such use, and that to transfer a device from one art and adapt it to another involves invention. To transfer the device bodily from the annealing box or sleigh runner, or any of the other patents in the prior art, in order that it may perform the same duty in a brake shoe, does not constitute invention. The strengthening of metal castings by the insertion of wrought iron bars whether in annealing boxes, sleigh runners, or any other device requiring that result, is in the metal casting or foundry art. So far as the mere use of this kind of a casting is concerned, it consists only in the use of one casting of the prior art for another, to serve its old purpose. The case comes within the rule laid down by Judge Seaman in Indiana Novelty Mfg. Co. v. Crocker Chair Co. (C. C.) 90 Fed. 488, and the same case on appeal, 103 Fed. 496, 43 C. C. A. 287. Judge Grosscup, speaking for the Court of Appeals for this circuit in that case, says:

"Marble has not introduced into the world a new article, or a new means of making an old article. He did not conceive the wooden bicycle rim, or the desirability of its having a strong, close joint. The rim was already in existence, and the necessity for such a joint was already obvious; and, in the allied arts, the precise joint, in all features of mechanical construction, was already at hand."

The joint used by Marble on the bicycle rim was shown to have been previously used in the Davis chair and the archery bow. The court groups them all with respect to the patent in suit in the "art of joinery." Moreover, it is not satisfactorily shown by the evidence presented that the casting gains anything in strength from the wrought iron bar or rod. There is a very great difference of opinion between the witnesses on this point. It is impossible for the court to say

with certainty what the effect is. The evidence shows with fair degree of assurance that the wrought iron bar tends to chill the molten metal of the casting, thereby freeing the one from the other. Nobody seems to know what the result is, and the court cannot construct positive theory from shifting data. The hammer tests shown by complainant are not satisfactory, since the witness, who testifies in regard to them, also says that the test was somewhat unusual. It is hard to see that the resistance of a shoe to a sudden blow is an accurate measure of the tensile resistance of the shoe to the strain to which it is put in its contact with the wheel, and this difference in the character of the stress put upon the shoe detracts from the value of the experiment. What complainant says concerning the chilling and consequent weakening effect following the imbedding of cold inserts in the face of the shoe (page 33, complainant's brief) may well be true in regard to the chill attending the imbedding of the wrought iron strip. The record lacks evidence sufficient to justify the court in affirmatively finding that the casting is materially strengthened by the addition of the wrought iron strip or bar. However, whether it is or not, it is old and depends entirely upon its transfer to brake shoes for its novel features. This does not constitute invention. While complainant's expert makes some point of the location of the bar immediately back of the inserts so that the strain is first upon the wrought iron, and not upon the cast iron, there is nothing in the claim or specification to this effect. It is difficult to see how the strip or rod could be imbedded in the casting of a composite shoe without occupying about the same position as that of both the brake shoes here in question.

Whatever of commercial success the shoe in suit has had, may perhaps be accounted for from the fact that the tendency of the shoe to break and throw out its broken parts is avoided by the wrought iron strip. This feature is shown in the prior art. Moreover, the record in this respect is equally unsatisfactory in supplying data upon which a finding of merit in the Herron shoe can be predicated. It appears that complainants are manufacturing 300 tons of brake shoes per day, and of this amount but 3 per cent. are Herron shoes. The composite shoes of all kinds, Herron included, used by the railroads are but a small per cent. of the total number of shoes used by the said railroads; the common cast iron shoe being still in almost general use. Clearly upon the record Herron does not belong to that class who performed the last step—the step which turned unsuccessful devices into a final success. Noninfringement is urged by defendants. The differences between the shoe of the patent in suit and that of defendants are minor, and would not be allowed to defeat a meritorious patent. Whether in the cases at bar these differences are sufficient to establish this defense need not be considered in view of the foregoing.

The bills must be dismissed for want of equity.