## T. J. EDWARDS, Inc., v. GOLD SEAL SHOE CORPORATION.

### No. 4641.

District Court, D. Massachusetts.

April 30, 1940.

714

Charles W. McDermott and Melvin R. Jenney, both of Boston, Mass., for plaintiff.

James W. Sullivan, of Lynn, Mass., and Robert Cushman, Robert J. Keating, and Roberts, Cushman & Woodberry, all of Boston, Mass., for defendant.

FORD, District Judge.

This is a suit for infringement of two patents; No. 1,753,884 issued April 8, 1930, hereinafter referred to as the first patent, and No. 1,796,686 issued March 17, 1931, hereinafter referred to as the second patent. The defenses are (1) invalidity and (2) non-infringement. It is agreed that the bill of complaint may be dismissed, without prejudice, as to patent No. 2,024,916.

### Findings of Fact.

The first patent is a device for marking shoe upper parts, particularly for putting guide lines on vamps, quarters, and other parts of shoe uppers as a guide to a subsequent operation, such as, fancy stitching. The second patent is for a similar device and was directed to an improvement over the first patent, in that, as the specification states, " * * * the ink pad 35 is provided with a smooth surface formed by the thick skin or tegument on a sheet of sponge rubber is vulcanized in a mold under heat and pressure so that the rubber surfaces adjacent the faces of the mold are consolidated to form a thick tegument extending about the interior cells of the sponge rubber. The consolidated tegument presents a smooth elastic surface to the sharp marking edge 18 and resists the sinking of the sharp marking edge 18 deeply into the ink pad. The tegument is elastic so that the smooth surface thereof is restored intact immediately upon the removal of the sharp marking edge 18 therefrom."

The work done by these devices was, in part, formerly done by stencil, the vamp or other parts of the shoe being placed under the stencil and lines drawn through the latter by hand. In this sort of marking, the lines, the patentee claimed, are discontinuous, because of the parts of the stencil necessary to hold it together.

The subject matter of the first patent comprises a marking device, or printing press frame, a marking die, which is a plate that comprises a continuous edge having the same configuration as the line of the fancy stitch design projecting from a flange secured to a wooden block, thereby making continuous lines to be followed by the stitching operator, and a gauge against which the vamp is set to position it for marking. A separate marking die and gauge was to be used for each pattern and style.

The defendant purchased from the plaintiff, through its selling agent, ten of these devices prior to 1933 and at the same time purchased a quantity of marking dies and gauges. Up to 1935, the defendant continued to purchase these marking die and gauge combinations from the plaintiff. After that date, it purchased a considerable quantity from a manufacturer by the name of Veiner who is not licensed under any of the patents in suit. The dies purchased from Veiner were used in the Edwards machines sold to the defendant and the plaintiff's suit for infringement is based entirely on the use of these dies and gauges on the Edwards machines.

Claims 3, 8, 9, 12, 14, and 17, of the first patent and claims 1, 2, 3, 12, and 13, of the second patent are in suit.

Claim 3 of the first patent, typical of all claims in suit, reads as follows: "3.

A *marking* device having, in combination, means for supporting an upper blank comprising a wall shaped to engage the peripheral edge of the blank, a printing member having a surface shaped to print a fancy stitch design on the supported blank, an ink pad, and means for moving the member from a position where it engages the ink pad to a position where it engages the supported blank."

Claim 1 of the second patent describes what Edwards claims is an improvement over the first patent, and reads as follows: "1. In a marking device, the combination with means for supporting the work, and a marking member having a narrow edge face for depositing a marking substance on the supported work, of means for supplying the edge face with the marking substance comprising a sponge rubber pad with a consolidated tegument directly engageable with the edge face."

The other claims in suit in the second patent are descriptive of claimed additional disclosures, i. e., that the ink pad is supplied with ink "during each cycle of operations" (claim 3); "an impervious ink pad, a marking pattern movable from a position where it engages the impervious pad to a position where it marks the work, and a pervious ink pad, of a pervious roll for transferring ink from the pervious to the impervious ink pad" (claim 12); and "a stationary ink pad immune from sulcation" (claim 13).

## Prior Art.

Herbert E. Edwards, president of the plaintiff company, revealed that before his alleged invention the methods employed in the art for making guide lines and shoe uppers were (1) hand marking with stencils without continuous lines; and (2) impression markers (penetration of the leather with an indentation by means of a press). He further testified that the rows of little points pricked up from the sheet metal plates in impression marking would form a continuous set of indentations about one-eighth of an inch apart across the leather and these were followed by the stitcher. He further testified, and I find it to be a fact, that many manufacturers are still using this pricking method of marking. Testimony further disclosed that stencils with continuous lines were also used in the art in addition to pricking point plates and fancy line plates. It also disclosed that the

fancy line plates used in the impression markers carried a raised edge similar to the ridges projecting from the flange of the plaintiff's marking die. The prior art also disclosed that hand operated, self-inking printing presses, or printing stamps, to make impressions were old in the art before Edwards (Smith, 288,674, 1883; and Sigwalt, 399,089, 1889); as were combination die and gauge members (Schneider, 642,878, 1900; and Stanborn, 1,501,072, 1924); also old were ornamenting dies or pattern boards for use in presses for marking leather with guide lines (Marks, 361,431, 1887; MacFarland, 955,277, 1910; and Hayden, 1,553,529, 1925); as were removable gauges to position shoe parts for use with ornamenting dies (Lautenschlager, 1,631,041, 1927).

When this case was tried before me, I was not at all impressed that the device of the patents involved invention. I directed attention to this fact and requested counsel to inform me what, more than mechanical skill, was involved in anything that Edwards did. Printing presses were old in the art; hundreds of years before him. This, with what else he had in combination, seemed, at best, to be a utilization of old devices for a new and analogous use and nothing that was presented to me in the briefs has changed my mind. The prior art embraced all that Edwards has in his device. The continuous line feature Edwards relies upon has little substance. Certain types of stencils possess these. Raised edges were present in the fancy line plates and were used in the impression markers. Even if they were not, it required no great imagination to have a continuous row of points pricked up from the sheet metal plates used for impression markers and make one continuous line rather than leaving an eighth of an inch separating them. A long citation of authorities is not necessary to support the doctrine that it is not invention to use an old machine for a new and analogous purpose; Friend et al. v. Burnham & Morrill Co., 1 Cir., 55 F.2d 150, 153; Walker on Patents, Deller's Ed., Sec. 43, p. 226; nor is it invention, as was done here, to combine old devices without a new mode of operation or a new and useful result. All the parts of the Edwards first patent had been employed for a long time before him to do substantially what they were utilized for in his device. Nothing

that was added showed anything that indicated inventive genius.

The plaintiff relies heavily upon one feature reflected by claim 8 in the first patent to indicate patentability. The material part reads, " * * * means for supporting the printing member with its center line in the same plane as the center line of the upper blank."

The plaintiff argues that Edwards was the first in the shoe art to suggest that by "center grading", as he termed it, a series of upper blanks of the same style, but varying from each other in size and width, could all be supported on a single gauge. Edwards, in his testimony, himself, described this feature as follows: "By means of this center grading * * * the contours of the throat area of the vamp are maintained uniform along the entire throat line of the vamp in the entire series from (sizes) 2 to 9. By making use of this fact, one die, one marking die, and one marking gauge will properly mark a full range of sizes."

The plaintiff points out that in Lautenschlager, supra, a separate gauge is required for each different size and different contour of shoe parts. Again, in the specification Edwards described this grading as follows: "As the vamp 13 is one of a series of center graded vamps this means that if the printing member 9 is provided with a fancy stitch design 14 suitable for the requirements of a vamp of the largest size and width it will also print the same fancy stitch design 14 on a vamp of the smallest size and width of the same style because the center lines of the vamp 13 and the printing member 9 are arranged in the same vertical plane."

■ This is what the plaintiff's counsel referred to as a great contribution to the art of shoe making. What all this "center grading" means to me is simply positioning the gauge so that the center of the printing member for the larger size would always meet the center position of the uniform throat lines of the vamps. With this arrangement, it is perfectly obvious that the printing member would print the vamps of smaller sizes and widths of the same style as well as those of the larger sizes. This might be an improvement over Lautenschlager

and the prior art, but I cannot bring myself to the conclusion that it involves invention. Even assuming, an improvement is present here of one part of an old combination, no right is given to claim that improvement in combination with other old parts which perform no new function in the combination. The improvement, even if it was invention, which I hold it was not, was not patented 'as such, but is claimed in combination with other old elements which performed no new function. The patent is, therefore, void as claiming more than the applicant invented. Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 550, 58 S.Ct. 662, 82 L.Ed. 1008. Further, as to whether invention was involved in this "great contribution to the art", it is well to point out that "not every change or even every improvement in a crowded art" justifies the granting of a patent monopoly. Wachsman v. Wachsman et al., 2 Cir., 91 F.2d 929, 931.

■ The plaintiff's contention that the defense of invalidity was not open to the defendant because it did not set it up specially in its answer is without merit. Walker on Patents, Deller's Ed., Sec. 887D, p. 2768; Hendy v. Miners' Iron Works, 127 U.S. 370, 8 S.Ct. 1275, 32 L.Ed. 207; Brown v. Piper, 91 U.S. 37, 23 L.Ed. 200; Baldwin v. Kresl, 7 Cir., 76 F. 823, 825. Cf. 35 U.S.C. § 69, 35 U.S.C.A. § 69.

### Conclusions.

■ I conclude that the first patent is invalid for want of invention. The second patent is likewise invalid for the reasons stated above, together with the fact that the claims in the second patent show no advance over the prior art. Ink rolls and pads were old and the use of the type of ink pad displayed in the device of the second patent involved nothing more than ordinary mechanical skill. Even if it was an improvement, it did not involve invention. See Lincoln Engineering Co. v. Stewart-Warner Corp., supra.

In view of this determination, it is unnecessary to consider the question of non-infringement raised by the defendant's answer.

Bill dismissed, with costs.